# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39075**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Zachary J. JOHNSTON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 November 2017

————————————

Military Judge: Matthew S. Ward (arraignment); Vance H. Spath.

Approved sentence: Dishonorable discharge, confinement for 10 months, and reduction to E-1. Sentence adjudged 20 January 2016 by GCM convened at Moody Air Force Base, Georgia.

For Appellant: Major Virgina M. Bare, USAF; Major Annie W. Morgan, USAF; Brian L. Mizer, Esquire.

For Appellee: Major G. Matt Osborn, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and MINK, Appellate Military Judges.

Judge MINK delivered the opinion of the court, in which Senior Judges MAYBERRY and JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MINK, Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of two specifications of attempted sexual abuse of a child under the age of 16 years and one specification of attempted receipt of child pornography, all in violation of Article 80, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 880. The adjudged and approved sentence consisted of a dishonorable discharge, 10 months of confinement, and reduction to E-1.[1]

On appeal, Appellant asserts: (1) the Government was preempted from charging the attempted Article 134 offense in Specification 3 of the Charge; (2) the conviction for attempted receipt of child pornography is legally and factually insufficient; and (3) Appellant's sentence was inappropriately severe.[2] Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

In March 2015, Appellant, a 22-year-old senior airman, responded to a Craigslist advertisement on the Internet that he believed was posted by a female named "Julia." The advertisement had actually been posted by Air Force Office of Special Investigations (AFOSI) Special Agent CS, a male agent posing as the 14-year-old female "Julia" as part of "Operation Broken Heart," an Internet Crimes Against Children (ICAC) undercover investigation. Appellant then began an extensive conversation with "Julia" by email and text messages that continued for approximately four days. Shortly after responding to the advertisement, in the fourth text message sent by Special Agent CS, Appellant learned that "Julia" was 14 years old. Despite expressing some initial concerns about her age, Appellant continued the conversation and quickly changed the focus to sexual topics. During the course of their conversations, Appellant communicated indecent language to "Julia," stating "by f[**]king u till u c[*]m all over my d[**]k," "making u c[*]m again and again," "Want to see my c[**]k," and "I want to see your pu[**]y." Appellant also sent "Julia" a photograph of his penis and asked "Julia" to send him a photograph of her vagina. Appellant was charged with attempting to commit the underlying offenses because

---

[1] Pursuant to Article 58b, Section (b), UCMJ, the convening authority waived all mandatory forfeitures of pay and allowances for a period of six months, release from confinement, or expiration of term service, whichever occurred sooner, for the benefit of Appellant's dependent spouse and children. In a memorandum dated 5 January 2016, the convening authority denied Appellant's request for deferment of mandatory forfeitures and reduction in rank but failed to articulate the reasons for the denial as required by Rule for Courts-Martial 1101(c)(3). *See United States v. Jalos*, No. ACM 39138, 2017 CCA LEXIS 607, at *5–6 (A.F. Ct. Crim. App. 5 Sep. 2017) (unpub. op.). Our review of the record of trial reveals no colorable showing of possible prejudice as a result of the convening authority's error by failing to articulate the reasons for the denial and we conclude that no relief is warranted.

[2] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

"Julia" was not an underage girl, but rather a fictitious person portrayed by Special Agent CS.

## II. DISCUSSION

### A. Preemption

In Specification 3 of the Charge, Appellant was charged with attempting to knowingly and wrongfully receive child pornography in violation of Article 80, UCMJ. The underlying offense Appellant was alleged to have attempted to commit is listed in Article 134, UCMJ. Appellant asserts the Government was preempted from charging the "assimilated Article 134 offense in this case because Congress intended to limit prosecution for conduct of this nature in a complete way to Article 120b(c)."

We review questions of preemption de novo. *United States v. Benitez*, 65 M.J. 827, 828 (A.F. Ct. Crim. App. 2007). The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132. *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 60.c.(5)(a).

Our superior court has long placed an additional requirement on the application of the preemption doctrine that has greatly restricted its applicability:

> [S]imply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way.

*United States v. Anderson*, 68 M.J. 378, 386–87 (C.A.A.F. 2010) (citing *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979)) (alteration in original). The preemption doctrine "applies only when (1) Congress intended to limit prosecution for . . . a particular area of misconduct to offenses defined in specific articles of the Code, and (2) the offense charged is composed of a residuum of elements of a specific offense." *United States v. Curry*, 35 M.J. 359, 360–61 (C.M.A. 1992) (quotation marks and citations omitted).

Appellant was charged with attempting to knowingly and wrongfully receive child pornography under Article 80, UCMJ. The elements of Article 80, UCMJ, require: (1) that the accused did a certain overt act; (2) that the act was done with the specific intent to commit a certain offense under the code; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *MCM*, pt. IV, ¶ 4.b. The "certain offense under the code" Appellant was attempting to commit was not "an assimilated Article 134 offense," as claimed by Appellant,

but rather the specifically listed Article 134 offense of receiving child pornography. *MCM*, pt. IV, ¶ 68b. The elements of that offense require: (1) that the accused knowingly and wrongfully received child pornography, and (2) that, under the circumstances, the conduct of the accused was of a nature to bring discredit upon the armed forces. *Id.*

In a series of recent cases, we have addressed similar preemption arguments related to the production of child pornography under the same listed Article 134 offense. We have held: "The changes to Article 120b, UCMJ, have not incorporated the listed Article 134, UCMJ, offense of child pornography. Therefore, the preemption doctrine does not apply to Article 134, UCMJ, child pornography specifications." *United States v. Chambers*, No. ACM 38975, 2017 CCA LEXIS 318, at *7 (A.F. Ct. Crim. App. 4 May 2017) (unpub. op.) (quoting *United States v. Costianes*, No. ACM 38868, 2016 CCA LEXIS 391, at *19–20 (A.F. Ct. Crim. App. 30 Jun. 2016) (unpub. op.)). We find no meaningful distinction between Appellant's case involving the attempted receipt of child pornography and our prior decisions addressing production of child pornography, both of which are under the listed Article 134 offense, that would cause us to come to a different conclusion here. We conclude that the challenged Article 134 offense underlying the charged Article 80 offense with which Appellant was charged was not preempted by Article 120b.

## B. Legal and Factual Sufficiency

Appellant also challenges the legal and factual sufficiency of the evidence supporting his conviction for attempting to knowingly and wrongfully receive child pornography.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The "reasonable doubt" standard does not require that the evidence be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

As discussed above, Appellant was charged with attempting to receive child pornography in violation of Article 80, UCMJ. Appellant asserts that he neither had the specific intent to receive child pornography nor did he take a "substantial step" to do so, as required to prove an attempt under Article 80. We disagree.

Shortly after Appellant began communicating with a person he believed to be a 14-year-old girl, Appellant began asking her for pictures of herself, initially stating, "Send a sexy one lol" and later, "…u got any naked pics?" As Appellant continued his dialogue with "Julia," the topics included where she lived on base, when her mother would be at work, and the possibility of visiting "Julia."  The following exchange of text messages then occurred between Appellant and "Julia":

> Appellant: "Oh thats cool I cant wait to make u feel good;)"
>
> Julia: ":)) how u plan om doin thst boy?"
>
> Appellant: "By f[**]king u till u c[*]m all over my d[**]k"
>
> Appellant: "And making u c[*]m again and again"
>
> Julia: "k but im not tryna be on teen mom"
>
> Appellant: "Thats why condoms were made"

Two days after this conversation, during his continuing dialogue with "Julia," Appellant asked her if she wanted to see his "c[**]k" and then asked her for a photograph of her vagina, telling her "I want to see ur pu[**]y." SA CS, responding as "Julia," said "im at school how m I gonna take a pu[**]y pic 4 u?" Appellant then said in response, "In the bathroom or ti[**]ies." Later, as Appellant was attempting to arrange a meeting with "Julia," he sent her a text message stating, "Yeah, just send me some naked pics for motivation." Appellant then sent "Julia" a photograph of his penis and later a photograph of himself in his Air Force uniform. After being apprehended by the AFOSI, Appellant admitted in his written statement that he responded to the Craigslist advertisement and engaged in continuing conversations with "Julia," whom he said he knew was 14 years old.

"Child pornography" is defined in the UCMJ as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 68b.c(1). "Sexually explicit conduct" is further defined as "actual or simulated: …(e) lascivious exhibition of the genitals or pubic area of any person." *MCM*, pt. IV, ¶ 68b.c(7).

Relying on Appellant's own words in his messages to "Julia," a reasonable factfinder could conclude that Appellant had the specific intent to attempt to receive child pornography, i.e., the "lascivious exhibition of the genitals or pubic area" of the person he believed to be a 14-year-old girl and took a "substantial step" towards obtaining such by requesting a photograph of her vagina.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence is legally sufficient to support Appellant's conviction beyond a reasonable doubt. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction is therefore both legally and factually sufficient.

## C. Sentence Appropriateness

Lastly, Appellant asserts that his sentence was inappropriately severe and he requests the court reduce the dishonorable discharge to a bad-conduct discharge. We disagree and decline to do so.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c).

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Though we have great discretion to determine whether a sentence is appropriate, we have no power to "grant mercy." *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Appellant was convicted of attempting to sexually abuse a child under 16 years of age by intentionally communicating indecent language and by sending a picture of his penis to a person he believed was a 14-year-old child. Appellant was also convicted of attempting to knowingly and wrongfully receive child pornography from the person he believed was a 14-year-old girl by asking her to send him sexually explicit photographs.

We have given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial. Appellant was subject to a maximum sentence of 40 years of confinement, reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge. His approved sentence of a dishonorable discharge, 10 months of confinement, and reduction to E-1 was significantly less than the maximum that could have been imposed. The sentence properly addressed Appellant's serious misconduct, was legally appropriate based on the facts and circumstances of this particular case, and was not inappropriately severe.

## III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court